

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-21-00441-CV

**IN THE INTEREST OF D.M.A.**, L.G.S., K.D.T., and M.A., Children

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2020-PA-01981
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:  Lori I. Valenzuela, Justice

Sitting:  Rebeca C. Martinez, Chief Justice
Beth Watkins, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: February 2, 2022

AFFIRMED

D.H. appeals the trial court's order terminating her parental rights to her youngest child, M.A.[1]  In addition to M.A., D.H. is the mother of three older children who were also the subject of the underlying proceeding, D.M.A., L.G.S, and K.D.T.[2]  On July 16, 2021, the trial court held a bench trial where the caseworker, maternal grandfather, and D.H. testified.  Following the proceeding, the trial court signed a Final Order in Suit Affecting the Parent-Child Relationship and Order of Termination naming D.H. possessory conservator of the three eldest children and terminating D.H.'s parental rights to M.A.  We affirm.

---

[1] To protect the privacy of minor children, we use initials to refer to the children and their biological parents.  TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).  M.A. was born on October 28, 2019.

[2] These children were born on January 10, 2007; December 1, 2008; and September 1, 2010, respectively.

**STANDARD OF REVIEW**

When reviewing the sufficiency of the evidence, we apply the well-established standards of review. *See* TEX. FAM. CODE §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam) (legal sufficiency). The trier of fact is the sole judge of the credibility of witnesses and the weight to be given their testimony. *J.P.B.*, 180 S.W.3d at 573. In a bench trial, such as here, "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citation omitted). We therefore defer to the trial court's judgment regarding credibility determinations. While we must detail the evidence relevant to the issue of parental termination when reversing a finding based upon insufficient evidence, we need not do so when affirming a verdict of termination. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014).

To terminate parental rights pursuant to Family Code section 161.001, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE §§ 161.001(b), 161.206(a). In this case, the trial court found evidence of two predicate grounds to terminate D.H.'s parental rights, specifically section 161.001(b)(1) subsections (N) and (O). The trial court also found termination of her parental rights was in M.A.'s best interest. In D.H.'s sole issue on appeal, she contends the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in M.A.'s best interest.

**BEST INTEREST**

When considering the best interest of the child, we recognize the existence of a strong presumption that the child's best interest is served by preserving the parent-child relationship. *In*

*re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). However, we also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE § 263.307(a). The Department has the burden to rebut these presumptions by clear and convincing evidence. *See, e.g., In re R.S.-T.*, 522 S.W.3d 92, 97 (Tex. App.—San Antonio 2017, no pet.). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007; *R.S.-T.*, 522 S.W.3d at 97. To determine whether the Department satisfies its burden, the Texas Legislature has provided several statutory factors[3] for courts to consider regarding a parent's willingness and ability to provide a child with a safe environment, and the Texas Supreme Court has provided a similar list of factors[4] to determine a child's best interest. TEX. FAM. CODE § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

A best-interest finding, however, does not require proof of any particular factors. *See In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29,

---

[3] These factors include, inter alia: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE § 263.307(b).

[4] Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371-72.

2015, no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). Evidence that proves a statutory ground for termination is probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). "A trier of fact may measure a parent's future conduct by [her] past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). This conduct can include drug use, which can destabilize the home and expose children to physical and emotional harm if not resolved. *See, e.g., In re K.J.G.*, 04-19-00102-CV, 2019 WL 3937278, at *8 (Tex. App.—San Antonio Aug. 21, 2019, pet. denied) (mem. op.). In analyzing these factors, the court must focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

## BACKGROUND

The case was first referred to the Department on October 29, 2019, the day after M.A.'s birth, because D.H. tested positive for benzodiazepines, amphetamines, and methamphetamines. Valerie Mendiola, the Department caseworker, said that "[a]t the very beginning of the case, [D.H.] admitted that she had prior drug use and was willing to work services during the legal stage." Mendiola stated the Department provided Family Based Services, but D.H. did not engage.

During the pendency of the case, D.H. was incarcerated three times: (1) in December 2020 for assault-bodily-injury; (2) in January 2021 for aggravated assault with a deadly weapon; and (3) in May 2021 for possession of a controlled substance. D.H. was released on the first two allegations, but remained in custody on the third at the time of the bench trial. When not

incarcerated, D.H. engaged in only one service—in-patient drug treatment while she resided at Haven for Hope. She was unsuccessfully discharged from the program when it was discovered she was not using the bus passes to go to the doctor but instead was found walking around the Haven for Hope area. According to Mendiola, M.A. does not know her mother and, after D.H. was released from her second incarceration, she attended only one parent-child visitation in March of 2021. Mendiola stated D.H. has engaged in no other services and provided no explanation for why she did not engage in her services.

Mendiola testified D.H. did not have her own residence, stayed "here and there with different friends and family," and did not provide for the support or care of her children. Additionally, she did not know how D.H. supported herself. Mendiola stated D.H. had not made changes in her life to warrant the return of her children or that she could take care of the physical and emotional needs of the children.

After her birth, M.A. was placed with another caregiver, but the Department later discovered this person "wasn't taking great care of her, so the [fictive kin] took over placement, because she was already caring for [M.A.] from the very beginning." In March 2021, M.A. was placed with fictive kin who has demonstrated she can provide for M.A.'s physical and emotional needs, and has bonded with M.A. who is doing well. Although M.A. has been with fictive kin since only March 2021, Mendiola believed M.A. is better served staying with her because this person "was like the babysitter or the secondary," she was the one taking M.A. to all her appointments, and she was "practically around her 24/7." Fictive kin is willing to adopt M.A., but she has not yet begun the process to have her home licensed.

D.H.'s three eldest children were placed with their maternal grandfather and doing well. The grandfather could not adopt the children because he has an extensive criminal history. When asked why M.A. was not placed with her grandfather, Mendiola said M.A. had already been placed

with fictive kin and it would be traumatic to move her to her grandfather. According to Mendiola, the grandfather was willing to take M.A., but the Department did not believe it would be in her best interest. She stated that although the grandfather asked for all four children at the beginning of the case, he said "he did not want to deal with the mother in any manner."

Mendiola testified she visited with D.H. while D.H. was in custody at the Bexar County jail. During the last visit, about one week before trial, D.H. did not mention she was in a drug treatment program, known as ROARS, while in custody. Mendiola had not looked into any programs in which D.H. could engage while in custody because D.H. told her she would work her services once she was out of custody, which D.H. said would be "soon." When asked if she had looked into D.H.'s family and friends who might provide help, Mendiola said she was aware of only the grandfather and D.H.'s brother, and D.H. did not provide any other names. Mendiola said the brother was not appropriate for the children because he and D.H. were in a car together when she was arrested. Mendiola said D.H. told her that she wanted to work her services, maintain a relationship with her children, and she wanted all four children with her father.

Although she recommended terminating parental rights as to M.A., Mendiola recommended D.H. be appointed possessory conservator of the three oldest children and be required to pay child support because the grandfather did not qualify for any financial support. Mendiola added that D.H. has not paid child support in this case, does not have a job, and has no source of income.

Johnny Slack, the maternal grandfather, testified his relationship with D.H. "has been a rough one over the 20 years, but when she [is not] on [anything], she's fine." He was not in favor of naming D.H. possessory conservator for any of her children because D.H. did not pay any child support and it was a waste of time to ask for support. However, he believed the children loved D.H. and he thought she should remain in contact with them.

Slack was again asked if he would approve of D.H. being named possessory conservator and he again stated:

> No, no, no. Don't want none of that, because that's what happened the last time I had to let my kids go, because of her habits. And I hated to do that, but now that I got them back, I don't want to go through that again.

He said he would take M.A. and believed all four children should be together.

D.H. testified that her three oldest children should be placed with her father. She also wanted M.A. placed with her father. She said she did not want the court to terminate her parental rights because she wanted a second chance, she was enrolled in a treatment program, was looking forward to her father having custody of all four children, she was willing to work her services, and she had a bond with all the children. She wanted joint custody with her father "because [her] mental [sic] and [her] arrangements for financial [sic] [was] not so good." Upon release from incarceration, she was willing to pay child support.

On cross-examination, D.H. denied she told the caseworker she did not want her children with her father because she had "other issues" with her father, including that he tried to have sex with her when he was drunk. She admitted she would not be able to pay child support because her father told her she would not need to and she had never before paid any support when her children were in her parents' care before her mother's death. She said the last time she held a job was two years in the past.

In its order, the trial court found D.H. constructively abandoned her children, failed to comply with the provisions of a court order that established the actions necessary for her to obtain the return of her children, the Department had made reasonable efforts to reunify M.A. with D.H., and termination of D.H.'s parental rights as to M.A. was in the child's best interest. On appeal, D.H. challenges the sufficiency of the evidence only as to the best interest finding.

**ANALYSIS**

As stated above, a best-interest finding does not require proof of any particular factors and none of the factors we consider are exhaustive. *See G.C.D.*, 2015 WL 1938435, at *5; *J.B.-F.*, 2018 WL 3551208, at *3. "Evidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest"; *J.B.-F.*, 2018 WL 3551208, at *3; and evidence proving a statutory ground for termination is probative on the issue of best interest. *C.H.*, 89 S.W.3d at 28. "A trier of fact may measure a parent's future conduct by [her] past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *E.D.*, 419 S.W.3d at 620.

One of the grounds on which the court terminated D.H.'s parental rights was her failure to comply with the provisions of a court order that established the actions necessary for her to obtain the return of her children. The evidence shows D.H. failed to comply with requirements of the family plan that sought to assure the children would have a safe and stable environment. D.H. did not have a residence of her own, was not employed, and had never paid any child support. The trial court therefore could have reasonably credited this evidence as supporting its best-interest finding. *See In re O.N.H.*, 401 S.W.3d 681, 687 (Tex. App.—San Antonio 2013, no pet.) (noncompliance with service plan is probative of child's best interest).

Of the Family Code statutory factors, the trier of fact can consider that M.A.'s age made her vulnerable and that D.H. has a history of substance abuse. *See* TEX. FAM. CODE § 263.307(b); *see In re S.B.*, 207 S.W.3d 877, 887-88 (Tex. App.—Fort Worth 2006, no pet.) (considering parent's substance abuse, failure to provide a stable home, and failure to comply with service plan in holding evidence supported best-interest finding).

The *Holley* factors indicate M.A. is too young to express her desires. When a child is too young to express her desires, the factfinder may consider whether the child has bonded with her

caregivers, is well-cared for by them, and whether the child has spent minimal time with a parent. *See In re S.J.R.-Z.*, 537 S.W.3d 677, 693 (Tex. App.—San Antonio 2017, pet. denied). At the time of trial, M.A. was almost twenty-one months old, had been with fictive kin for about three months, but had the opportunity to bond with fictive kin since removal. D.H. said she had seen M.A. "a couple times at the CPS office," but Mendiola testified about only one visitation before D.H.'s incarceration. Mendiola testified M.A. was doing well, the current caregiver was meeting M.A.'s needs, and she anticipated this home to be a long-term placement for M.A. if D.H.'s parental rights were terminated.

The evidence of D.H.'s participation in drug counseling was disputed. Mendiola testified D.H. did not complete her service plan and was unsuccessfully discharged from in-patient treatment before her incarceration. D.H. testified she was in treatment classes while incarcerated and would continue drug treatment upon her release. We defer to the trial court's determinations of credibility. *See J.P.B.*, 180 S.W.3d at 573. The trial court reasonably could have believed Mendiola's testimony that D.H. did not or would not complete her drug treatment.

Evidence as to the other *Holley* factors also supports the trial court's best-interest finding. D.H. tested positive for controlled substances when M.A. was born and failed to complete drug treatment. Illicit drug use is relevant to multiple *Holley* factors, including a child's emotional and physical needs now and in the future, the emotional and physical danger to the child now and in the future, D.H.'s parental abilities, the lack of stability of D.H.'s home, and the acts or omissions that may indicate an improper parent-child relationship. *See Holley*, 544 S.W.2d at 371-72. "Additionally, a parent's illegal drug use exposes [a] child to the possibility that the parent may be impaired or imprisoned." *See In re A.M.L.*, No. 04-19-00422-CV, 2019 WL 6719028, at *4 (Tex. App.—San Antonio Dec. 11, 2019, pet. denied) (mem. op.) (explaining drug use implicates multiple *Holley* factors). A parent's criminal history is also relevant to a best-interest finding. *See*

*In re A.M.M.*, 04-19-00806-CV, 2020 WL 2139308, at \*4 (Tex. App.—San Antonio May 6, 2020, pet. denied) *(*mem. op.) (considering criminal history in determining whether termination of parental rights was necessary to protect child in the future and was in child's best interest); *In re A.L.T.*, 04-17-00452-CV, 2017 WL 5162173, at \*3 (Tex. App.—San Antonio Nov. 8, 2017, pet. denied) (mem. op.) (parent's criminal history and drug use indicated he had not and could not provide for child's physical and emotional needs or provide her with a safe and stable environment).

The trial court also could have inferred from D.H.'s past drug use and failure to complete drug treatment and her services that she lacked parental abilities, including the motivation to seek out and utilize available resources. *See In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) ("A fact finder may infer from a parent's failure to take the initiative to complete the services required to regain possession of [her] child that [she] does not have the ability to motivate [herself] to seek out available resources needed now or in the future."); *see also* TEX. FAM. CODE § 263.307(b)(10), (11) (providing courts may consider willingness and ability of child's family to seek out, accept, and complete counseling services and willingness and ability of child's family to effect positive environmental and personal changes within a reasonable period of time).

Evidence of D.H.'s instability in employment and housing also supports the best-interest finding. "A child's need for permanence through the establishment of a 'stable, permanent home' has been recognized as the paramount consideration in a best-interest determination." *In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). Mendiola testified D.H. lived from place-to-place, she was not employed, and her last job was two years in the past. The trial court reasonably could have determined that any stability D.H. might achieve was unlikely to last. *Cf. In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009) ("[E]vidence of improved

conduct, especially of short-duration, does not conclusively negate the probative value of a long history of . . . irresponsible choices.").

Viewing all of the evidence in the light most favorable to the best-interest finding and applying the appropriate factors, we conclude the trial court could have formed a firm belief or conviction that termination of D.H.'s parental rights was in M.A.'s best interest. We further conclude that any disputed evidence, viewed in light of the entire record, could have been reconciled in favor of the trial court's best-interest finding or was not so significant that the trial court could not reasonably have formed a firm belief or conviction that termination was in M.A.'s best interest. Therefore, we hold the evidence is legally and factually sufficient to support the trial court's best-interest finding.

## CONCLUSION

We overrule M.A.'s sole issue and affirm the trial court's Final Order in Suit Affecting the Parent-Child Relationship and Order of Termination.

Lori I. Valenzuela, Justice